LAWTON CALVIN ADKINS,

       Petitioner,

v.                                    Case No. 3:14-cv-910-J-34PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

       Respondents.

_____

## ORDER

### I. Status

Petitioner Lawton Calvin Adkins, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus By a Person in State Custody (Petition, Doc. 1). Adkins challenges a 2002 state court (Suwannee County, Florida) judgment of conviction for first degree premeditated murder. Respondents filed an Answer in Response to Order to Show Cause (Response, Doc. 30) with exhibits (Resp. Ex.). Adkins replied. See Reply in Response to Show Cause (Reply, Doc. 39). This case is ripe for review.

### II. Procedural History

On January 19, 2001, the State of Florida charged Adkins by indictment with murder in the first degree. Resp. Ex. A at 1. A jury found Adkins guilty of first degree premeditated murder. Resp. Ex. B at 23. The court sentenced Adkins to life in prison. Id. at 49-54; Resp. Ex. D at 35.

Adkins appealed his conviction to the First District Court of Appeal. Resp. Ex. L. On March 30, 2004, the First District Court of Appeal issued an opinion, which per curiam affirmed Adkins' conviction and sentence. The mandate issued on August 17, 2004. Resp. Ex. Q.

On August 10, 2005, Adkins filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. R at 1-65. Thereafter, he filed a supplement to the motion on February 29, 2008 (id. at 66-78) and an amended supplement to the motion on March 12, 2008 (id. at 79-92). On August 10, 2009, the trial court partially denied Adkins' motion for postconviction relief and ordered the State to respond to grounds 12, 13, 14, 15, 18, 19 and 20. After finding that Adkins failed to allege prejudice in his original motion, the court indicated that it would consider only the grounds raised in the amended supplemental motion filed on February 29, 2008. It also summarily denied claims 1, 8 and 10. Id. at 94-97.

Adkins filed a supplemental motion for postconviction relief on October 5, 2009 (id. at 126-30) and an amended supplemental motion on October 23, 2009 (id. at 131-36). Adkins's former defense counsel filed a response to his motion for postconviction relief with respect to grounds 12, 13, 14, 15, 18, 19 and 20. Id. at 137-47. Following an evidentiary hearing on those grounds, the trial court on August 6, 2013, entered a final order denying or dismissing each of Adkins's claims. Resp. Ex. S at 180-403.

Adkins appealed the denial of his motion for postconviction relief to the First District Court of Appeal, which per curiam affirmed the trial court's order on July 7, 2014. Resp. Ex. W. Adkins filed a motion for rehearing, which the court denied on August 21, 2014. Resp. Ex. X. The mandate issued on September 8, 2014. Resp. Ex. Y.

### III. <u>Evidentiary Hearing</u>

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing.  <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011).  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Thompson's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### IV. <u>Limits of Habeas Relief, Exhaustion and Procedural Default</u>

### A.  <u>Limits of Habeas Relief</u>

Federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991) (citations omitted).  As such, federal habeas "does not lie for errors of state law." <u>Id.</u> at 67 (quotations omitted).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  <u>Id.</u> at 67-68.  As such, federal courts may not review claims based exclusively on state law issues even if the

claims are "couched in terms of equal protection and due process." Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (quotation omitted).

## B. Exhaustion

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b), (c). To exhaust state remedies, the petitioner must "fairly present[ ]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). As the United States Supreme Court has explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

To fairly present a claim, the petitioner must present it to the state courts as a federal, constitutional claim rather than as a matter of state law. See Duncan, 513 U.S. at 365-66; Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 456-59 (11th Cir. 2015).

To do so, a petitioner can include "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin, 541 U.S. at 32.  But raising a state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement."  Duncan, 513 U.S. at 366.  Likewise, merely citing to the federal constitution is insufficient to exhaust a claim in state court.  Anderson v. Harless, 459 U.S. 4, 7 (1982); see also McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) ("'The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'") (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)).  As explained by the Eleventh Circuit:

> To "fairly present" a claim, the petitioner is not required to cite "book and verse on the federal constitution."  Picard v. Connor, 404 U.S. 270, 278, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971) (quotation omitted).  Nevertheless, a petitioner does not "fairly present" a claim to the state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin, 541 U.S. at 32, 124 S. Ct. 1347.  In other words, "to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues."  Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007) (quoting Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir.1998)) (concluding that the petitioner's claims were raised where the petitioner had provided enough information about the claims (and citations to Supreme Court cases) to notify the state court that the challenges were being made on both state and federal grounds).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1352 (11th Cir. 2012).  "The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim."  Preston, 785 F.3d at 457 (11th Cir.

2015); see also French v. Warden, Wilcox State Prison, 790 F.3d 1259, 1270-71 (11th Cir. 2015), cert. denied, 136 S. Ct. 815 (2016).

## C. Procedural Default and Exceptions

"[W]hen 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile," a procedural default occurs. Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quotation omitted); see also Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."). In such circumstances, federal habeas review of the claim is typically precluded. Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012); Smith, 256 F.3d at 1138. Nevertheless, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010).

To show cause for a procedural default, "the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." Id. at 1157 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). "[T]o show prejudice, a petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" Id. (quoting McCoy v. Newsome, 953 F.2d 1252, 1261 (11th Cir. 1992) (per curiam)).

In the absence of a showing of cause and prejudice, a petitioner may obtain consideration on the merits of a procedurally defaulted claim if he can establish that a failure to consider the claim will result in a fundamental miscarriage of justice. Coleman,

501 U.S. at 724. This exception has been described as "exceedingly narrow in scope as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Id. (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)), cert. denied, 535 U.S. 926 (2002)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## V. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28.U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), cert. granted, Wilson v. Sellers, 137 S. Ct. 1203 (2017); Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th

Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011); see also Johnson v. Williams, 568 U.S. 289, --, 133 S. Ct. 1088, 1096 (2013).[1] Thus, the state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Richter, 562 U.S. at 100; Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim, unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 98. The Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court

---

[1] The presumption is rebuttable and may be overcome "when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100; see also Williams, 568 U.S. at --, 133 S. Ct. at 1096-97. However, "the Richter presumption is a strong one that may be rebutted only in unusual circumstances." Williams, 133 S. Ct. at 1096.

identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[2] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016); see also Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1259 (11th Cir. 2016). Notably, the Supreme Court has instructed that "[i]n order for a state court's decision to be an unreasonable application of [that] Court's case law, the ruling must be 'objectively unreasonable, not merely wrong; even clear error will not suffice.'" Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (quoting Woods v. Donald, 575 U.S. ---, ---, 135 S. Ct. 1372, 1376 (2015) (per curiam) (internal quotation marks omitted)). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the

---

[2] The Eleventh Circuit has previously described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016); see also Landers, 776 F.3d at 1294 n.4; Cave v. Sec'y, Dep't of Corr., 638 F.3d 739, 744-47 & n.4, 6 (11th Cir. 2011); Jones v. Walker, 540 F.3d at 1277, 1288 n.5.

merits.  See Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (regarding § 2254(d)(1));

Landers v. Warden, Att'y Gen. of Ala., 776 F.3d 1288, 1295 (11th Cir. 2015) (regarding §

2254(d)(2)).

Where the state court's adjudication on the merits is "'unaccompanied by an

explanation,' a petitioner's burden under section 2254(d) is to 'show [ ] there was no

reasonable basis for the state court to deny relief.'"  Wilson, 834 F.3d at 1235 (quoting

Richter, 562 U.S. at 98).  Thus, "a habeas court must determine what arguments or

theories supported or, as here, could have supported, the state court's decision; and then

it must ask whether it is possible fairminded jurists could disagree that those arguments

or theories are inconsistent with the holding in a prior decision of [the] Court."  Richter,

562 U.S. at 102; see also Wilson, 834 F.3d at 1235; Marshall, 828 F.3d at 1285.  To

determine which theories could have supported the state appellate court's decision, the

federal habeas court may look to a state trial court's previous opinion as one example of

a reasonable application of law or determination of fact.  Wilson, 834 F.3d at 1239; see

also Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017).  However, in Wilson,

the en banc Eleventh Circuit stated that the federal habeas court is not limited to

assessing the reasoning of the lower court.[3]  834 F.3d at 1239.  As such,

> even when the opinion of a lower state court contains flawed
> reasoning, [AEDPA] requires that [the federal court] give the
> last state court to adjudicate the prisoner's claim on the merits
> "the benefit of the doubt," Renico [v. Lett, 449 U.S. 766, 733
> (2010)] (quoting [Woodford v. Visciotti, 537 U.S. 19, 24
> (2002)]), and presume that it "follow[ed] the law," [Woods v.

---

[3] Although the Supreme Court has granted Wilson's petition for certiorari, the "en banc
decision in Wilson remains the law of the [Eleventh Circuit] unless and until the Supreme
Court overrules it."  Butts, 850 F.3d at 1205 n.2.

> Donald, --- U.S. ---, 135 U.S. 1372, 1376 (2015)] (quoting
> Visciotti, 537 U.S. at 24).

Id. at 1238; see also Williams, 133 S. Ct. at 1101 (Scalia, J., concurring).  Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  Titlow, 134 S. Ct. at 16 (2013).  "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'"  Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03).  "If this standard is difficult to meet, that is because it was meant to be."  Richter, 562 U.S. at 102.

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

> undermine confidence in the outcome." Id., at 694, 104 S. Ct.
> 2052.  It is not enough "to show that the errors had some
> conceivable effect on the outcome of the proceeding." Id., at
> 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as
> to deprive the defendant of a fair trial, a trial whose result is
> reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163.  Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa."  Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)).  As stated in Strickland:  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  466 U.S. at 697.

Finally, "the standard for judging counsel's representation is a most deferential one."  Richter, 562 U.S. at 105.  "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'"  Daniel, 822 F.3d at 1262 (quoting Strickland, 466 U.S. at 689).  "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance."  Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S.

111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VII. Findings of Fact and Conclusions of Law

### A. Grounds One through Four

In Grounds One through Four, Adkins asserts four claims of trial court error. In particular, Adkins contends that (1) the cumulative impact of the prosecutor's improper comments denied him of his right to a fair trial; see Petition at 5, 15; (2) the trial court erred by excluding evidence of the victim's toxicology report that was relevant to his theory of defense; see id. at 6, 15; (3) the trial court erred by overruling his objection to an outburst by the victim's son; see id. at 8, 15-16; and (4) the trial court erred by instructing the jury that voluntary intoxication is not a defense; see id. at 9, 16. Adkins raised all four of these claims in his direct appeal to the First DCA as issues of state law, but he failed to fairly present them as violations of federal constitutional law.[4] See Duncan, 513 U.S. at 365-66; Preston, 785 F.3d at 456-59. Regardless, for the reasons that follow, the

---

[4] Adkins's failure to fairly present any federal constitutional claim in state court renders his claims in Grounds One through Four unexhausted, despite Respondents' assertions to the contrary. See Response at 21, 36, 39, 43 ("Petitioner exhausted his state court remedies on this ground by presenting this argument in his direct appeal."). The Court is inclined to conclude that Respondents made an inadvertent oversight, see Day v. McDonough, 547 U.S. 198, 202 (2006), rather than a deliberate decision to forego a defensive argument, see Wood v. Milyard, 566 U.S. 463, 132 S. Ct. 1826, 1834 (2012). Regardless, the Court need not decide this issue because Adkins's claims in the Petition fail to rise to the level of due process violations and, as such, are not cognizable in federal habeas court. See McGuire, 502 U.S. at 67; Branan, 861 F.2d at 1508.

claims in Adkins's Petition also do not present violations of his federal constitutional rights, and as such, his claims fail in federal habeas court. See McGuire, 502 U.S. at 67-68; McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir. 1992).

## 1. **Ground One**

As Ground One, Adkins asserts that the cumulative impact of the prosecutor's improper comments rose to the level of fundamental error and denied him of his right to a fair trial. See Petition at 5, 15. Specifically, Adkins contends:

> The trial court erred by allowing the prosecutor to make improper statements which curried favor with the jury. Prior to closing arguments, the prosecutor offered to waive his closing argument if it would preclude Appellant from making a closing statement. The tenor of the comments was such that the prosecutor endeared himself to the jury and prejudiced Appellant.

> The prosecutor made additional improper comments during his closing argument including comments on facts not in evidence, personal opinion, vouching for state witnesses, attacks on the defense and defense counsel, and misstatements of the law and jury instructions.

> Although only some of these improprieties were objected to by the defense, the cumulative impact of these comments rose to the level of fundamental error, denying Appellant of his right to a fair trial.

Id. at 15. However, other than bare assertions of "fundamental error" and denial of a "right to a fair trial," the Petition lacks any specific, articulable violations of federal constitutional provisions.[5] See Petition at 5, 15. Likewise, Adkins failed to assert any

---

[5] Although Adkins adds that the trial court's error violated "the 6th and 14th amendments to a fair and impartial trial" in his Reply, see Reply at 8, 11, the Court may not consider claims raised for the first time in a reply brief. Cf. Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) ("[a]rguments raised for the first time in a reply brief are not properly before a reviewing court").

federal constitutional violation in state court in his direct appeal from his conviction, although he did raise this claim as a matter of state law.  <u>See</u> Resp. Ex. L at 13, 16-31.  Without a written opinion, the First DCA per curiam affirmed Adkins's judgment of conviction and sentence.  <u>See</u> Resp. Ex. N.

To the extent Adkins's claim involves an issue of state law, his claim in Ground One is not cognizable in federal habeas.  <u>See</u> <u>McGuire</u>, 502 U.S. at 67-68 (federal habeas relief "does not lie for errors of state law" but "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citations omitted)); <u>see also</u> 28 U.S.C. §2254(a).  But even if he fairly presented his claim in his Petition as a violation of federal constitutional claim, his claim involving improper prosecutorial comments would fail.  As the Supreme Court has explained,

> it "is not enough that the prosecutors' remarks were undesirable or even universally condemned."  <u>Darden v. Wainwright</u>, 699 F.2d, at 1036.  The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 94 S. Ct. 1868, 40 L.Ed.2d 431 (1974).  Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power."  <u>Id.</u>, at 642, 94 S. Ct., at 1871.

<u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).

The Eleventh Circuit has further explained that "due process is denied only 'when there is a reasonable probability,' or 'a probability sufficient to undermine confidence in the outcome,' that, but for the offending remarks, 'the outcome of the proceeding would have been different.'"  <u>Spencer v. Sec'y, Dep't of Corr.</u>, 609 F.3d 1170, 1182 (11th Cir. 2010) (quoting <u>United States v. Eyster</u>, 948 F.2d 1196, 1206 (11th Cir. 1991)).  "If the

misconduct fails to render the trial fundamentally unfair, habeas relief is not available."

Id. (quoting Land v. Allen, 573 F.3d 1211, 1219 (11th Cir. 2009)).

> In determining whether the act of misconduct rendered the trial fundamentally unfair, we measure the remark against the totality of the facts and circumstances. Hall v. Wainwright, 733 F.2d 766, 773 (11th Cir.1984). "In determining whether arguments are sufficiently egregious to result in the denial of due process," facts such as the following may be considered: "(1) whether the remarks were isolated, ambiguous, or unintentional; (2) whether there was a contemporaneous objection by defense counsel; (3) the trial court's instructions; and (4) the weight of aggravating and mitigating factors." Land, 573 F.3d at 1219-20. Moreover, we consider "the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused," and "the strength of the competent proof to establish the guilt of the accused." Davis v. Zant, 36 F.3d 1538, 1546 (11th Cir.1994). Thus, where the evidence of guilt is overwhelming, an improper comment by a prosecutor usually does not render the trial fundamentally unfair in violation of the Constitution. See Land, 573 F.3d at 1220.

Id.

Given the totality of the facts and circumstances surrounding the prosecutor's comments at Adkins's trial, including the overwhelming evidence of Adkins's guilt, the remarks fail to render the trial fundamentally unfair. Because the prosecutor's comments fail to rise to the level of a due process violation, Adkins's claim fails. To the extent AEDPA deference applies, the Court finds that the First DCA's rejection of Adkins's prosecutorial misconduct claim on direct appeal was neither contrary to, nor an unreasonable application of clearly established federal law, and did not result from an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The claim in Ground One is denied.

## 2. **Ground Two**

As Ground Two, Adkins asserts that the trial court erred by excluding evidence of the victim's toxicology report showing the presence of cocaine because it was relevant to his theory of defense, which was that the shooting was an "accident, intertwined with self-defense." See Petition at 6, 15. Again, Adkins fails to articulate a federal constitutional violation in his federal Petition. Similarly, Adkins failed to assert any federal constitutional violation in the direct appeal from his conviction, although he did raise this claim as a matter of state law. See Resp. Ex. L at 13, 32-40. Without a written opinion, the First DCA per curiam affirmed Adkins's judgment of conviction and sentence. See Resp. Ex. N.

Not only does Adkins fail in his federal Petition to fairly present a federal constitutional claim, federal habeas courts "generally will not review a state trial court's decisions on whether to admit evidence and will not grant a writ of habeas corpus simply because a state trial judge has erred, under state law, in this determination." Thigpen v. Thigpen, 926 F.2d 1003, 1011 (11th Cir. 1991); see also Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir. 1998) (unless a state trial court evidentiary error rises to the level of fundamental unfairness and violates the Due Process Clause, a federal habeas court may not review the claim); Alderman v. Zant, 22 F.3d 1541, 1555 (11th Cir. 1994) (federal courts generally "will not review the trial court's actions concerning the admissibility of evidence"); Boykins v. Wainwright, 737 F.2d 1539, 1543 (11th Cir. 1984) (holding that federal courts are not empowered to correct erroneous evidentiary rulings in state court except where rulings deny petitioner fundamental constitutional protections). Notably, the state court "has wide discretion in determining whether to admit evidence at trial, and may

exclude material evidence when there is a compelling reason to do so." <u>Lynd v. Terry</u>, 470 F.3d 1308, 1314 (11th Cir. 2006). As such, when a petitioner claims a state court's evidentiary ruling deprived him of due process, the habeas court must ask only "whether the error was of such magnitude as to deny fundamental fairness to the criminal trial . . . ." <u>Alderman</u>, 22 F.3d at 1555 (internal quotation marks and citations omitted).

Adkins's claim does not rise to the level of fundamental unfairness that would violate due process, and consequently, it is not appropriate for federal habeas corpus review. <u>See</u> <u>McGuire</u>, 502 U.S. at 67-68. To the extent that AEDPA deference applies, the Court finds that the state court's decision was neither contrary to nor an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. As such, Adkins's claim does not warrant federal habeas corpus relief. The claim in Ground Two is denied.

### 3. **Ground Three**

As Ground Three, Adkins asserts that the trial court erred by overruling his objection to an "outburst" by the victim's son. <u>See</u> Petition at 8, 15-16. During the son's testimony, the son asked whether Adkins was going to stare at him the whole time he was testifying. <u>See</u> Resp. Ex. G at 515. Although Adkins's counsel did not contemporaneously object, he expressed concern over the incident the following day. Resp. Ex. H at 596-97. Once again, other than bare assertions of denial of a "right to a fair trial by an impartial jury," the Petition fails to articulate any specific violation of federal constitutional provision. <u>See</u> Petition at 8, 16. In addition, Adkins raised this claim in his state court direct appeal solely as a state law issue. <u>See</u> Resp. Ex. L at 13, 41-45. Without a written opinion, the First DCA per curiam affirmed Adkins's judgment of conviction and sentence. Resp. Ex. N.

To the extent Adkins's claim involves an issue of state law, his claim in Ground Three is not cognizable in federal habeas. <u>See</u> <u>McGuire</u>, 502 U.S. at 67-68. Because the trial judge is in the best position to evaluate the prejudicial effect of a witness's outburst, the decision on whether to remedy the incident lies within the trial judge's sound discretion. <u>See</u> <u>Messer v. Kemp</u>, 760 F.2d 1080, 1087(11th Cir.1985). Even if Adkins would have articulated a violation of federal due process, his claim would be couched merely in terms of due process, and not significant enough to rise to the level of a due process violation. <u>See</u> <u>Branan</u>, 861 F.2d at 1508.

Adkins's claim does not rise to the level of fundamental unfairness that would violate due process, and consequently, it is not appropriate for federal habeas corpus review. <u>See</u> <u>McGuire</u>, 502 U.S. at 67-68. To the extent that AEDPA deference applies, the Court finds that the state court's decision was neither contrary to nor an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. As such, Adkins's claim does not warrant federal habeas corpus relief. As such, the claim in Ground Three is denied.

### 4. <u>Ground Four</u>

As Ground Four, Adkins contends that the trial court erred by instructing the jury that voluntary intoxication is not a defense. <u>See</u> Petition at 9, 16. Adkins asserts that he did not raise voluntary intoxication, that no evidence justified the instruction, and that the instruction was misleading to the jury. <u>Id.</u> Again, other than an oblique reference to the denial of his "right to a fair trial," Adkins does not come close to articulating a federal constitutional violation in his federal Petition. Adkins raised this claim only by presenting

the issue in his direct appeal as a state law issue.  <u>See</u> Resp. Ex. L.  Without a written

opinion, the First DCA per curiam affirmed Adkins's judgment of conviction and sentence.

Resp. Ex. N.

To the extent Adkins's claim involves an issue of state law, his claim in Ground Four

is not cognizable in a federal habeas action. <u>See</u> <u>McGuire</u>, 502 U.S. at 67-68.  But even

if he fairly presented this claim in his Petition as a violation of federal constitutional claim,

his claim that the trial court erred by needlessly giving a particular jury instruction would

fail.  The Supreme Court has "defined the category of infractions that violate fundamental

fairness very narrowly."  <u>McGuire</u>, 502 U.S. at 73 (quotations and citation omitted).

"Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause

has limited operation."  <u>Id.</u>  With those principles in mind, jury instructions "may not be

judged in artificial isolation, but must be considered in the context of the instructions as a

whole and the trial record."  <u>Id.</u> at 72.

The trial court instructed the jury that "evidence of a defendant's voluntary intoxication

is not admissible to show that the defendant lacked the specific intent to commit an

offense."  Resp. Ex. J at 1166.  The Court agrees with Respondents that even if Adkins

did not specifically claim voluntary intoxication as his theory of defense, there was no due

process violation by instructing the jury that Adkins's intoxication could not excuse his

killing of the victim.  Adkins's claim does not rise to the level of fundamental unfairness

that would violate due process, and consequently, it is not appropriate for federal habeas

corpus review.  <u>See</u> <u>McGuire</u>, 502 U.S. at 67-68.  To the extent that AEDPA deference

applies, the Court finds that the state court's decision was neither contrary to nor an

unreasonable application of clearly established federal law, and was not based on an

unreasonable determination of the facts in light of the evidence presented. As such, Adkins's claim does not warrant federal habeas corpus relief. The claim in Ground Four is denied.

**B. <u>Grounds Five through Thirteen</u>**

In Grounds Five through Thirteen, Adkins asserts that his counsel provided constitutionally ineffective assistance. Adkins exhausted these claims by raising them in state court collateral proceedings. <u>See</u> Resp. Ex. R. The state circuit court denied Adkins's claims in a lengthy opinion. The First DCA affirmed without written opinion.

The Court affords the state court decision the deference it is due under §2254(d). <u>See</u> <u>Butts</u>, 850 F.3d at 1204 (citing <u>Richter</u>, 562 U.S. at 100). Because reviewing the state circuit court's decision denying relief leads to the same conclusion under §2254(d) as reviewing the First DCA's affirmance, the Court will review the state circuit court's written explanation for its rejection of Adkins's claim.[6] <u>See</u> <u>Butts</u>, 850 F.3d at 1204 & 1205, n.2. Applying the deference the Court owes state courts under AEDPA, the Court asks "whether any fairminded jurist could agree with the state trial court's decision denying [Adkins] habeas relief." <u>Id.</u> at 1205 (citations omitted). "If some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied." <u>Id.</u> (quotations and citation omitted).

---

[6] Where "it does not matter to the result, and to avoid any further complications if the United States Supreme Court disagrees with [the] <u>Wilson</u> decision," the federal habeas court may apply § 2254(d) by deferring to "the more state-trial-court focused approach." <u>Butts</u>, 850 F.3d at 1204.

# 1. **Ground Five**

As Ground Five, Adkins contends that defense counsel rendered ineffective assistance of counsel by failing to remove an "actually biased" juror, Morris Kight, from the panel. Petition at 17. Adkins exhausted this claim by raising it as ground one of his state court motion for postconviction relief. Finding that the record conclusively refuted the contention that counsel performed deficiently, the state circuit court denied his claim on August 10, 2009, and again after the evidentiary hearing in the final order on August 6, 2013. See Resp. Ex. S at 180. In the final denial, the circuit court wrote:

> In Ground One, the Defendant alleges that Trial Counsel was ineffective for failing to move to strike Juror Kight from the jury. The Defendant argues that Juror Kight was biased because he was the brother-in-law of the Suwannee County Jail Administrator, and that the Defendant and the Jail Administrator had a documented conflict. However, Ground One fails.
>
> In order to prove a claim of ineffective assistance of counsel for failure to strike an allegedly biased juror under the Strickland postconviction standard, a defendant must prove actual bias on the part of the juror. Troy v. State, 57 So. 3d 828 (Fla. 2011); Carratelli v. State, 961 So. 2d 312 (Fla. 2007). This standard is more difficult to meet than the standard used on direct appeal. Id. A defendant does not prove actual bias if the juror indicated that she or he could be fair during voir dire. Id.
>
> Applying these principles to the instant motion's challenge to Juror Kight, this Court finds that Trial Counsel was not ineffective for failing to strike Juror Kight, because the record reflects that Juror Kight did not indicate actual bias. The record demonstrates that, when Juror Kight disclosed that the Jail Administrator was his brother-in-law, Trial Counsel asked him explicitly "So due to the fact that Captain Mills is your brother-in-law, would you be more inclined to believe the officers who took the stand over other witnesses?" Trial Transcript, 375-76. In response, Juror Kight answered, "no." Trial Transcript at 376.

Juror Kight also did not demonstrate actual bias in the following circumstances: when asked whether he would require the State to convince him of the Defendant's guilt beyond a reasonable doubt, Juror Kight answered, "yes" (Trial Transcript at 335); and when asked whether his past experiences as a juror were pleasant experiences and whether he could evaluate the instant case without letting his prior jury experiences affect his judgment, Juror Kight answered "yes" to both questions. (Trial Transcript at 342). And, when asked whether he would hold his previous experience with the State Attorney's office against the prosecution, Juror Kight also answered "no." Trial Transcript at 344.

In addition to the fact that the record refutes the Defendant's claim that Trial Counsel was ineffective for failing to strike Juror Kight, the record also reflects that the Defendant was present for the discussion of the final panel of jurors, and that, when this Court asked whether the Defendant approved the panel, he responded, "Yes, sir, your Honor." Trial Transcript at 389. Therefore, Juror Kight's responses during voir dire demonstrate that he could be a fair juror and clearly do not establish actual bias.

Altogether, Ground One is conclusively refuted by the record, which reflects that Juror Kight did not demonstrate actual bias and that the Defendant approved the jury panel that included Juror Kight. Accordingly, Ground One's claim that Trial Counsel was ineffective for failing to strike Juror Kight fails to demonstrate the deficient performance prong of the Strickland standard. Troy, 57 So. 3d 828. As a result, Ground One must be denied. Hurst, 18 So. 3d 975.

Resp. Ex. S at 182-83. The First DCA affirmed.

Courts evaluate an ineffective-assistance-of-counsel claim based on failure to object to jury selection as they would any other Strickland claim. See Harvey v. Warden, Union Corr. Inst., 629 F.3d 1228, 1238 (11th Cir. 2011). "The performance inquiry will generally boil down to whether trial counsel's actions (or inactions) were the result of deficient performance or sound trial strategy." Id. (citing Strickland, 466 U.S. at 689).

The state circuit court's conclusion that counsel did not perform deficiently is both consistent with Strickland and entitled to double deference from this Court. See Richter, 562 U.S. at 105; Daniel, 822 F.3d at 1262. The state court's decision denying relief is neither contrary to nor an unreasonable application of Strickland, and it did not rely on an unreasonable determination of the facts in light of the evidence presented to the state court. The claim in Ground Five is denied.

## 2. Ground Six

As Ground Six, Adkins contends that defense counsel rendered ineffective assistance of counsel by failing to object properly to the introduction of collateral act evidence during his trial. Petition at 18-19. Adkins raised this claim as ground two of his state court motion for postconviction relief. The state circuit court described his claim as follows:

> In Ground Two, the Defendant argues that Trial Counsel was ineffective for failing to object to the admission of bad character or propensity evidence. The Defendant asserts that a State's witness, a bouncer at the bar that the Defendant had patronized on the night of the offense, testified about the Defendant's other bad acts solely to prove bad character or propensity.

Resp. Ex. S at 183.

The state circuit court denied his claim on the merits in the final order on August 6, 2013, because the court found that the claim did not meet either prong of the Strickland standard. See id. at 183-86. The circuit court first explained that Adkins did "not demonstrate that Counsel provided deficient performance by failing to object to the bouncer's testimony, as the record reflects that the bouncer's testimony was not offered solely to prove bad character or propensity." Id. at 184. The circuit court concluded its assessment of deficient performance by stating:

> As the bouncer's testimony was admissible for the State's purpose of proving motive and absence of mistake or accident, the testimony did not warrant an objection from Trial Counsel. Because the testimony did not warrant an objection, Trial Counsel could not have provided deficient performance by failing to object.

Id. at 185.

Next, the state circuit court also found that Adkins's claim did not meet the prejudice prong of the Strickland standard. Id. After reviewing the evidence and explaining it's reasoning, the state circuit court found that "the outcome of the trial likely would not have been different if Trial Counsel had objected to these comments [made by the bouncer during his testimony]." Id. at 186.

The Court defers to the state trial court's decision and concludes that it is neither contrary to nor an unreasonable application of Strickland, and it did not rely on an unreasonable determination of the facts in light of the evidence presented to the state court. The claim in Ground Six is denied.

### 3. **Ground Seven**

As Ground Seven, Adkins contends that defense counsel rendered ineffective assistance of counsel by failing to properly cross-examine the State's witnesses, Cynthia Collier and Sergeant St. John's. Petition at 20. Adkins raised this claim as ground eight of his state court motion for postconviction relief. The state circuit court denied his claim on August 10, 2009, and again after the evidentiary hearing in the final order on August 6, 2013. Resp. Ex. S at 186-88. In the final order, the circuit court concluded that Adkins's claim failed for two reasons. First, finding that Adkins's claim was conclusory in that it did not demonstrate how the trial would have been different if counsel had impeached the two witnesses, the state court concluded that Adkins failed "to properly plead the

prejudice prong of the <u>Strickland</u> standard." <u>Id.</u> at 187. Second, the state court found that counsel "did not provide ineffective assistance by failing to impeach two witnesses with the depositions of two other witnesses, as such impeachment would have been improper." <u>Id.</u>

The Court defers to the state trial court's decision and concludes that it is neither contrary to nor an unreasonable application of <u>Strickland</u>, and it did not rely on an unreasonable determination of the facts in light of the evidence presented to the state court. The claim in Ground Seven is denied.

### 4. <u>Ground Eight</u>

As Ground Eight, Adkins asserts that defense counsel was ineffective for failing to present Talenana Roberts as a witness at trial. <u>See</u> Petition at 21-22. Adkins raised this claim as ground nine of his state court motion for postconviction relief. The state circuit court denied his claim in the final order on August 6, 2013. Resp. Ex. S at 188-89. In doing so, the court found that Adkins failed to meet the prejudice prong of the <u>Strickland</u> standard because the outcome of the trial would not have been different. <u>Id.</u> at 188; 189. Even if Talenana Roberts had been called as a witness, "the jury still would have heard Deputy Brownfield's firsthand account and the other, more incriminating evidence of the Defendant's guilt." <u>Id.</u> at 189.

The Court defers to the state trial court's decision and concludes that it is neither contrary to nor an unreasonable application of <u>Strickland</u>, and it did not rely on an unreasonable determination of the facts in light of the evidence presented to the state court. The claim in Ground Eight is denied.

### 5. <u>Ground Nine</u>

As Ground Nine, Adkins contends that his counsel rendered ineffective assistance by failing to raise a destruction of evidence claim as to fingerprints that could have been found on the firearm but were not because the Florida Department of Law Enforcement serologist swabbed the firearm prior to examination. Specifically, Adkins asserts that his counsel should have objected to the admission of the firearm and/or moved to dismiss the charges based on the destruction of fingerprint evidence. Petition at 23. Adkins raised this claim as ground ten of his state court motion for postconviction relief. The state circuit court denied his claim on August 10, 2009, and again in the final order on August 6, 2013. Resp. Ex. S at 189. The state circuit court concluded that Adkins failed to prove the deficient performance prong of the <u>Strickland</u> standard "[b]ecause Ground Ten neither allege[d] nor demonstrate[d] bad faith on the part of law enforcement or the State, and because it [was] based on speculation." <u>Id.</u>

Applying double deference to the state trial court's decision that counsel did not perform deficiently, the Court concludes that it is neither contrary to nor an unreasonable application of <u>Strickland</u>, and it did not rely on an unreasonable determination of the facts in light of the evidence presented to the state court. The claim in Ground Nine is denied.

### 6. <u>Ground Ten</u>

As Ground Ten, Adkins contends that counsel rendered ineffective assistance by failing to investigate, depose, and call as a witness at trial Billy Burnham. Petition at 24-25. Adkins raised this claim as ground twelve of his state postconviction motion. The state circuit court denied his claim in the final order on August 6, 2013. Resp. Ex. S at

189-191.  The state circuit court concluded that Adkins failed to prove the deficient performance prong of the <u>Strickland</u> standard after explaining:

> This Court finds that Trial Counsel's testimony demonstrates that he considered an alternative course (calling Billy Burnham to testify that the Defendant did not make the alleged incriminating statements that Deputy Brownfield claimed he did), diligently attempted to exhaust that course by sending his investigator out five times, but was ultimately unable to utilize that course because his investigator could not locate Billy Burnham.  This Court finds that Trial Counsel then made a strategic decision to pursue investigation of Michael McKneely's potential contribution to the defense.  Based on the fact that Billy Burnham could not be found and the fact that it was unclear to Trial Counsel that Billy Burnham would have helped the defense, this Court finds that it was reasonable under the norms of professional conduct for Trial Counsel not to call Billy Burnham as a witness at trial or investigate him any further than he did.  Accordingly, Ground Twelve fails to demonstrate that Trial Counsel was ineffective for failing to call Billy Burnham as a witness at trial or investigate him any further.

<u>Id.</u> at 190-91.

Applying double deference to the state trial court's decision that counsel did not perform deficiently, the Court defers to the state trial court's decision and concludes that it is neither contrary to nor an unreasonable application of <u>Strickland</u>, and it did not rely on an unreasonable determination of the facts in light of the evidence presented to the state court.  The claim in Ground Ten is denied.

### 7.  <u>Ground Eleven</u>

As Ground Eleven, Adkins asserts that counsel was ineffective for failing to properly question defense witness James Hughens.  Petition at 26.  Adkins raised this claim as ground fifteen in his state court motion for postconviction relief.  The state circuit court denied his claim in the final order on August 6, 2013 <u>see</u> Resp. Ex. S at 191-92.  The

state circuit court concluded that Adkins failed to prove the deficient performance prong of the Strickland standard after explaining:

> This Court finds that Trial Counsel's testimony demonstrates that he considered an alternative course (calling James Hughens as a witness), but rejected that course because he feared that part of James Hughens's potential testimony would not have been relevant and that part of it could have damaged the Defendant's case. This Court finds that it was reasonable under the norms of professional conduct for Trial Counsel not to call James Hughens as a witness at trial after evaluating his deposition testimony, reviewing the deposition testimony with the Defendant, and considering James Hughens's potential trial testimony, especially since Trial Counsel was acting to protect what he believed to be the Defendant's best interests: not opening the door to potentially harmful evidence. Accordingly, Ground Fifteen fails to demonstrate that Trial Counsel was ineffective for failing to call James Hughens as a witness at trial.

Id.

Applying double deference to the state trial court's decision that counsel did not perform deficiently, the Court concludes that the state court's decision is neither contrary to nor an unreasonable application of Strickland, and it did not result from an unreasonable determination of the facts in light of the evidence presented to the state court. The claim in Ground Eleven is denied.

### 8. Ground Twelve

As Ground Twelve, Adkins asserts that counsel rendered ineffective assistance by failing to acquire and rely upon the second 911/dispatch tape. Petition at 27. Adkins presented this claim as ground eighteen of his state postconviction motion. The state circuit court denied his claim in the final order on August 6, 2013. Resp. Ex. S at 192-93. The court concluded that Adkins had not proven the deficient performance prong of the Strickland standard, explaining:

> Although the Defendant seemed to sincerely believe that he called 911 on the date of the offense, this Court finds Trial Counsel more credible. Because Trial Counsel is more credible than the Defendant, this Court makes the factual finding, based on Trial Counsel's testimony, that the Defendant did not tell Trial Counsel that he called 911 on the date of the offense. Further, this Court finds that Trial Counsel provided effective assistance of counsel by sending the 911 tape to an expert, by sending his investigator to interview the 911 operator, and by deposing the 911 operator thereafter. Based upon the prevailing standards of postconviction law discussed throughout, this Court finds that Trial Counsel's actions with regard to the 911 tape were reasonable under the norms of professional conduct, based on what Trial Counsel knew at that time.

Id. at 193.

Applying double deference to the state trial court's decision that counsel did not perform deficiently, the state court's decision is neither contrary to nor an unreasonable application of Strickland, and it did not result from an unreasonable determination of the facts in light of the evidence presented to the state court. The claim in Ground Twelve is denied.

## 9. **Ground Thirteen**

As Ground Thirteen, Adkins contends that counsel was ineffective by failing to investigate, depose and call as a witness at trial, Geraldine Chauncey. Petition at 28. Adkins presented this claim in state court postconviction proceedings, where it was inadvertently referred to as both grounds twenty and twenty-four. Resp. Ex. S at 193. The state circuit court denied his claim in the final order on August 6, 2013. Id. at 193-94. Following a hearing, the court wrote:

> [S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected, and if counsel's decision was reasonable under the norms of professional conduct.

> Occhicone, 768 So. 2d 1037; Bolender, 503 So. 2d 1247; Henry, 948 So. 2d 609. This Court finds that Trial Counsel's testimony demonstrates that he considered an alternative course (calling Geraldine Chauncey as a witness), but rejected that course because, after having deposed her, he feared that her potential testimony would not have portrayed the Defendant in a favorable light. This Court finds that it was reasonable under the norms of professional conduct for Trial Counsel not to call Geraldine Chauncey as a witness at trial after evaluating her deposition testimony, especially since Trial Counsel was acting to protect what he believed to be the Defendant's best interests: not opening the door to potentially harmful evidence. Accordingly, this ground fails to demonstrate that Trial Counsel was ineffective for failing to call Geraldine Chauncey as a witness at trial. Because this ground does not meet the deficient performance prong of the Strickland standard, it must be denied. Hurst, 18 So. 3d 975.

Id. at 194.

Applying double deference to the state trial court's decision that counsel did not perform deficiently, the Court concludes that the state court's decision is neither contrary to nor an unreasonable application of Strickland, and it did not result from an unreasonable determination of the facts in light of the evidence presented to the state court. The claim in Ground Thirteen is denied.

### C. Grounds Fourteen and Fifteen

As Ground Fourteen, Adkins asserts that judgment of acquittal was warranted notwithstanding the jury's verdict, see Petition at 29-30, and as Ground Fifteen, Adkins asserts his motion for new trial should have been granted because the verdict was contrary to the weight of the evidence. Petition at 31-33. Respondents contend that Adkins failed to exhaust these claims in state court, and as such, the claims are procedurally defaulted. Response at 78-86. The Court agrees. See Baldwin, 541 U.S. at 29.

In his Reply, Adkins attempts to relitigate his trial. See Reply at 29-38. Although he writes that "cause and prejudice is satisfied beyond a reasonable doubt that the petitioner was maliciously prosecuted beyond a reasonable doubt by allowing the jury to hear facts not in evidence, hear faulty instructions based on that evidence," id. at 33, Adkins fails to show cause and prejudice for his failure to raise the claims in Grounds Fourteen and Fifteen in state court collateral litigation. See Coleman, 501 U.S. at 750. Even under a liberal reading of his pro se pleadings, the Court finds that Adkins fails to show either cause and prejudice for his procedural default or the exceedingly narrow fundamental miscarriage of justice. See id.; Schlup, 513 U.S. at 327. As such, his claims in Grounds Fourteen and Fifteen are denied.

## VIII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Adkins seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Adkins "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The **Clerk of the Court** shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Adkins appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The **Clerk of the Court** is directed to close this case and terminate any pending motions.

DONE AND ORDERED at Jacksonville, Florida, this 16th day of August, 2017.


MARCIA MORALES HOWARD
United States District Judge

lc22
c:    Lawton Calvin Adkins. #I05113
       Counsel of Record